**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**JOHN DOE**,

      Plaintiff,

  vs.                                      No. 08cv1041MCA/LFG

**CITY OF ALBUQUERQUE,**

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on *Defendant City of Albuquerque's Motion and Consolidated Memorandum to Dismiss* [Doc. 3], filed November 6, 2008. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court denies the motion.

**I. BACKGROUND**

The following allegations of fact are taken from Plaintiff's *Complaint for Injunctive and Declaratory Relief* and, for purposes of Defendant's motion to dismiss, are accepted as true. See Gann v. Cline, 519 F.3d 1090, 1091 (10th Cir. 2008).

Plaintiff John Doe ("John Doe") is registered with the State of New Mexico as a convicted sex offender. [Doc. 1; Exh. A at 2]. On March 4, 2008, Defendant City of Albuquerque ("the City"), through an administrative instruction, officially banned all registered sex offenders from using and/or entering any of the City's public libraries. [Id.; Exh. A at 2]. The administrative instruction provides:

> Registered sex offenders are not allowed in public libraries in the City of Albuquerque. This ban includes any person currently registered under the Megan's law of any state, the New Mexico Sex Offender Registration and Notification Act of the Albuquerque Sex Offender Registration and Notification Act. Library staff shall send a letter to every sex offender who has a library card and inform them they are no longer allowed in our libraries. The Albuquerque Police Department, the Bernalillo County Sheriff's Office, the New Mexico State Police and other law enforcement agencies shall enforce this ban.

[Id.; Exh. A, Attachment 1].

As a former user of the City libraries and a holder of a City library card, John Doe received the letter referred to in the administrative instruction, informing him that he had been banned. [Doc. 1; Exh. A at 3]. John Doe alleges that, prior to the ban, he "frequently visited the City's public libraries, checked out books, CDs, used other reference material available to him, and attended meetings and lectures. . . ." [Id.; Exh. A at 3]. Given the ban, however, John Doe now lacks access to the City's public libraries and therefore is unable to receive information contained in books, magazines, newspapers, movies, and CDs. [Id.; Exh. A at 3]. Additionally, given that the express terms of the administrative instruction mandate enforcement of the ban by "[t]he Albuquerque Police Department, the Bernalillo County Sheriff's Office, the New Mexico State Police, and other law enforcement agencies[,]" any attempt by John Doe to enter any of the City's public libraries would subject him to a credible threat of prosecution. [Id.; Exh. A at 3]. John Doe alleges that the administrative instruction "constitutes an official City policy, custom, and practice." [Id.; Exh. A at 2].

2

In response to the administrative instruction and the City's ban against registered sex offenders in public libraries, John Doe, on October 9, 2008, filed his *Complaint for Injunctive and Declaratory Relief* in the State of New Mexico, County of Bernalillo, Second Judicial District. [Doc. 1; Exh. A]. In his complaint, which he brings pursuant to 42 U.S.C. § 1983 and the New Mexico Declaratory Judgment Act, John Doe alleges violations of rights secured by (1) the First Amendment to the United States Constitution (Count I); (2) the Fourteenth Amendment to the United States Constitution (substantive due process, procedural due process, and equal protection) (Counts II, III, and IV); (3) Article II of the New Mexico Constitution, Section 17 (free speech) (Count V); (4) Article II of the New Mexico Constitution, Section 18 (substantive due process, procedural due process, and equal protection) (Counts VI, VII, and VIII); and (5) Article II of the New Mexico Constitution, Section 4 (inherent rights) (Count IX).[1]

Pursuant to 28 U.S.C. § 1443(b), the City timely removed the matter to this Court and, on the same day, moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), on the ground that "Plaintiff's Complaint does not state a cognizable claim as a matter of law. . . ." [See Doc. 1; Doc. 3 at 1]. John Doe urges the Court to deny the City's motion, arguing that he has pled each of his claims with the required legal sufficiency. [Doc. 9 at 2].

---

[1] On April 10, 2009, the parties stipulated to the dismissal of the state and federal procedural due process claims that had been asserted in Counts III and VII. [See Doc. 36].

## II. ANALYSIS

### A. Standard of Review

#### 1. Motion to Dismiss

In order to withstand a motion to dismiss made pursuant to Fed.R.Civ.P. 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 569 (2007). In handing down Twombly, the United States Supreme Court invalidated the longstanding rule that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Court explained that "after puzzling the profession for 50 years, this famous observation has earned its retirement." Twombly, 550 U.S. 544, 563. In order to survive dismissal under the new standard, a plaintiff must "nudge[ his] claims across the line from conceivable to plausible . . . ." Id. at 570. In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

The Tenth Circuit has stated that

> "plausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (*quoting* Twombly, 550 U.S. at 570)(internal citations omitted).

The Supreme Court has recently expounded upon the meaning of Twombly:

> Two working principles underlie [the] decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009)(citation omitted). The Supreme Court has also commented that

> [i]n keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.

Id. at 1950.

Finally, "'[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.'" Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009) (*quoting* Sutton v. Utah State Sch. for Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir.1999)). Additionally, "[i]n evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits. . . ." Smith, 561 F.3d at 1098. With these standards in mind, the Court now turns to the case at hand.

### B. The Counts of Plaintiff's *Complaint for Injunctive and Declaratory Relief*

#### 1. Count I: Violations of Rights Secured by the First Amendment to the United States Constitution (42 U.S.C. § 1983)

It has long been "well established that the Constitution protects the right to receive information and ideas." Stanley v. Georgia, 394 U.S. 557, 564 (1969). Indeed, in effectively invalidating a city ordinance making it unlawful for "any person distributing handbills, circulars or other advertisements to ring the door bell, sound the door knocker, or otherwise summon the inmate or inmates of any residence to the door for the purpose of receiving such handbills, circulars or other advertisements they or any person with them may be distributing[,]" the United States Supreme Court commented that

> [t]he right of freedom of speech and press has broad scope. The authors of the First Amendment knew that novel and unconventional ideas might disturb the complacent, but they chose to encourage a freedom which they believed essential if vigorous enlightenment was ever to triumph over slothful

> ignorance. *This freedom embraces the right to distribute literature . . . and necessarily protects the right to receive it.*

Martin v. City of Struthers, Ohio, 319 U.S. 141, 142, 143 (1943) (emphasis added). The Court again spoke of the constitutional right to receive information when it struck down a postal statute mandating the Postmaster General's seizure and detention of mail originating in foreign countries, which was "determined by the Secretary of the Treasury pursuant to rules and regulations to be promulgated by him to be 'communist political propaganda[,]'" pending notification of the recipient and the recipient's subsequent request to receive such mail. Lamont v. Postmaster General of U. S., 381 U.S. 301, 302 (1965). In a concurrence, Justice Brennan remarked:

> It is true that the First Amendment contains no specific guarantee of access to publications. However, the protection of the Bill of Rights goes beyond the specific guarantees to protect from congressional abridgment those equally fundamental personal rights necessary to make the express guarantees fully meaningful. I think the right to receive publications is such a fundamental right. The dissemination of ideas can accomplish nothing if otherwise willing addressees are not free to receive and consider them. It would be a barren marketplace of ideas that had only sellers and no buyers.

Id. at 307 (Brennan, J. concurring) (internal citations omitted).[2]

---

[2] Similarly, in Griswold v. Connecticut, the Court explained that

> the State may not, consistently with the spirit of the First Amendment, contract the spectrum of available knowledge[, as t]he right of freedom of speech and press includes not only the right to utter or to print, but the right to distribute, the right to receive, the right to read . . . and freedom of inquiry [and] freedom of thought. . . .

7

Expanding on the constitutional right to receive information, a number of lower federal courts have determined that "this right, first recognized in Martin and refined in later First Amendment jurisprudence, includes the right to some level of access to a public library, the quintessential locus of the receipt of information." Kreimer v. Bureau of Police for Town of Morristown, 958 F.2d 1242, 1255 (3rd Cir. 1992); see also Neinast v. Bd. of Trs. of Columbus Metro. Library, 346 F.3d 585, 591 (6th Cir. 2003) (same); Minarcini v. Strongsville City School Dist., 541 F.2d 577, 581-583 (6th Cir. 1976) (concluding that removal of certain books from public-school library constituted First Amendment violation, and calling a library "a storehouse of knowledge[,]" "a mighty resource in the free marketplace of ideas[,]" and a place "specially dedicated to broad dissemination of ideas."); Armstrong v. Dist. of Columbia Pub. Library, 154 F.Supp.2d 67, (D.D.C. 2001) (noting "long-standing precedent supporting . . . First Amendment right to receive information and ideas, and this right's nexus with access to public libraries. . . .").

In this case, John Doe, a registered sex offender, alleges that the City's administrative instruction, which provides, in pertinent part, that "[r]egistered sex offenders are not allowed in public libraries in the City of Albuquerque[,]" works a violation of his First Amendment "right to free speech, . . . *right to receive information*, and . . . right to peaceably assemble. . . ." [Doc. 1; Exh. A at 4 (emphasis added)]. John Doe's allegations are sufficient to withstand the City's motion to dismiss with respect to Count I. See Twombly, 127 S.Ct. at 1974 (complaint must contain "enough facts to state a claim to relief that is plausible on

---

Griswold v. Connecticut, 381 U.S. 479, 482 (1965).

its face."). The Court concludes that Count I states "a plausible claim for relief[,]" Iqbal, 129 S.Ct. at 1949-50, because, if true, the allegations set forth therein would justify relief for violations of John Doe's First Amendment right to receive information, a constitutional right that has been recognized in a line of Supreme Court and federal appellate court decisions beginning with Martin v. City of Struthers, Ohio.

### 2. Count II: Violations of Rights Secured by the Fourteenth Amendment to the United States Constitution-Substantive Due Process (42 U.S.C. § 1983)

The Fourteenth Amendment "includes a substantive component that 'provides heightened protection against government interference with certain fundamental rights. . . .'" Troxel v. Granville, 530 U.S. 57, 65 (2000) (*quoting* Washington v. Glucksberg, 521 U.S. 702, 719 (1997)). Therefore, when a law or restriction "impinges upon fundamental rights protected by the Constitution[,]" courts apply the "strict scrutiny" standard of review. Oklahoma Educ. Ass'n v. Alcoholic Beverage Laws Enforcement Comm'n, 889 F.2d 929, 932 (10th Cir. 1989). In other words, "[i]f a legislative enactment burdens a fundamental right, the infringement must be narrowly tailored to serve a compelling government interest." Dias v. City and County of Denver, 567 F.3d 1169, 1181 (10th Cir. 2009).

As demonstrated above, John Doe has sufficiently pled that the City's administrative instruction burdens his fundamental, First Amendment rights. He also alleges that the administrative instruction is overbroad, and thus not narrowly tailored to serve a compelling government interest. [See Doc. 1; Exh. A at 4 (alleging that administrative instruction violates substantive due process component of Fourteenth Amendment inasmuch as the

9

City's "ban on registered sex offenders at its libraries is overbroad.")]. As with Count I, the Court concludes that John Doe's allegations are sufficient to withstand the City's motion to dismiss with respect to Count II. See Twombly, 127 S.Ct. at 1974. Count II states "a plausible claim for relief[,]" Iqbal, 129 S.Ct. at 1949-50, because the allegations contained therein "allow[] the court to draw the reasonable inference that [the City] is liable for the misconduct alleged[,]" id. at 1949, *i.e.*, the creation and implementation of an overbroad administrative instruction that is not narrowly tailored to serve a compelling government interest.

### 3. Count III: Violations of Rights Secured by the Fourteenth Amendment to the United States Constitution-Procedural Due Process (42 U.S.C. § 1983)

Because the parties stipulated to the dismissal of Count III, the Court does not address it here for purposes of the City's motion to dismiss. [See Doc. 36].

### 4. Count IV: Violations of Rights Secured by the Fourteenth Amendment to the United States Constitution-Equal Protection (42 U.S.C. § 1983)

"The Equal Protection Clause of the Fourteenth Amendment prohibits any state from denying 'any person within its jurisdiction the equal protection of the laws.'" Teigen v. Renfrow, 511 F.3d 1072, 1083 (10th Cir. 2007) (*quoting* U.S. CONST. amend. XIV, § 1. The Equal Protection Clause "creates no substantive rights. Instead, it embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." Vacco v. Quill, 521 U.S. 793, 799 (1997).

John Doe concedes that, for purposes of his equal protection claim, rational-basis review applies "because there is no 'suspect class' at issue." [Doc. 1; Exh. A at 8]. John Doe's position is in accord with that taken by the Tenth Circuit, which has expressly "reject[ed the] contention that sex offenders constitute a suspect class." Riddle v. Mondragon, 83 F.3d 1197, 1207 (10th Cir. 1996).

Under the standard of rational-basis review, this Court will uphold a government classification if it is "rationally related to a legitimate government purpose or end[,]" Christian Heritage Acad. v. Oklahoma Secondary Sch. Activities Ass'n, 483 F.3d 1025, 1031-32 (10th Cir. 2007), and a plaintiff's equal protection claim will fail "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Copelin-Brown v. N.M. State Pers. Office, 399 F.3d 1248, 1255 (10th Cir. 2005) (quotations omitted). To be sure, notwithstanding the arguments set forth by the parties themselves, the Court "is *obligated* to seek out other conceivable reasons for validating [a state policy] and must independently consider whether there is any conceivable rational basis for the classification, regardless of whether the reason ultimately relied on is provided by the parties or the court." Teigen, 511 F.3d at 1084 (emphasis in original) (*quoting* Powers v. Harris, 379 F.3d 1208, 1217 (10th Cir.2004)). Additionally, in the context of a Rule 12(b)(6) motion to dismiss, the Court, which accepts all of the allegations in the complaint as true, also "considers these 'facts' according to the deferential rational basis standard." Teigen, 511 F.3d at 1083. In the end, then "'[t]o survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the

11

presumption of rationality that applies to government classifications.'" Brown v. Zavaras, 63 F.3d 967, 971 (10th Cir. 1995) (*quoting* Wroblewski v. City of Washburn, 965 F.2d 452 (7th Cir.1992)).[3]

In this case, John Doe alleges that the City's decision to ban registered sex offenders from public libraries amounts to a form of "discriminat[ion] against [him] on the basis of his status as a registered sex offender without a rational basis[,]" in violation of his Fourteenth Amendment right to equal protection of the laws. [Doc. 1; Exh. A at 6]. He also asserts the unconstitutionality of the administrative instruction on the basis that a "ban on registered sex offenders at its libraries is overbroad." [Id.; Exh. A at 4].

Even at this stage of the proceedings, John Doe's hurdle with respect to his equal protection claim is high because (1) the City's administrative instruction enjoys a

---

[3] In Brown, the Tenth Circuit noted that "[c]ompeting standards for resolving a plaintiff's equal protection claim under Rule 12 complicate [the] analysis when [a court] review[s] a plaintiff's claim under the rational basis standard[,]" Brown, 63 F.3d at 971, and, similarly, in Wroblewski, the Seventh Circuit commented on the "perplexing situation [that] is presented when the rational basis standard meets the standard applied to a dismissal under Fed. R.Civ.P. 12(b)(6)." As the Seventh Circuit explained,

> The rational basis standard requires the government to win if any set of facts reasonably may be conceived to justify its classification; the Rule 12(b)(6) standard requires the plaintiff to prevail if [his complaint contains enough facts to state a claim to relief that is plausible on its face]. The rational basis standard, of course, cannot defeat the plaintiff's benefit of the . . . Rule 12(b)(6) standard. The latter standard is procedural, and simply allows the plaintiff to progress beyond the pleadings and obtain discovery, while the rational basis standard is the substantive burden that the plaintiff will ultimately have to meet to prevail on an equal protection claim.

Wroblewski, 965 F.2d at 459-460.

presumption of rationality, see Brown, 63 F.3d at 971; (2) this Court is obligated to conduct an independent inquiry to determine if "there is any conceivable rational basis for the classification," see Teigen, 511 F.3d at 1084; and (3) rather than demonstrate *any* set of facts that would entitle him to relief, John Doe now must "nudge [his] claims across the line from conceivable to plausible . . . ." Twombly, 127 S.Ct. at 1974 (emphasis added). Notwithstanding, and with full recognition that the competing standards present this Court with an exceedingly close call, the Court concludes that John Doe's allegations that the administrative instruction is overbroad and lacks a rational basis, which at this point in the litigation are necessarily made without the benefit of discovery to discern the precise basis for the City's decision, are sufficient (though barely) to withstand a Rule 12(b)(6) motion to dismiss. The Court concludes that facial plausibility exists in John Doe's contention that the City's decision to ban registered sex offenders from public libraries amounts to a form of "discriminat[ion] against [him] on the basis of his status as a registered sex offender without a rational basis[,]" in violation of his Fourteenth Amendment right to equal protection of the laws. [Doc. 1; Exh. A at 6]. Through Count IV, John Doe has pled sufficient "factual content [to] allow[] the [C]ourt to draw the reasonable inference that [the City] is liable for the misconduct alleged[,]" see Iqbal, 129 S.Ct. at 1949, *i.e.*, that the City's administrative instruction constitutes a form of discrimination against John Doe on the basis of his status as a registered sex offender without a rational basis, in violation of his Fourteenth Amendment right to equal protection of the laws.

### 5. Count V: Violations of Rights Secured by Article II, Section Seventeen of the New Mexico Constitution (New Mexico Declaratory Judgment Act)

Article II, § 17 of the New Mexico Constitution provides, in pertinent part, that "[e]very person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press. . . ." N.M. CONST. art. II, § 17. In considering together the First Amendment to the United States Constitution and Article II, § 17 of the New Mexico Constitution, the New Mexico Court of Appeals has commented that

> [w]hile the difference in the language used in the First Amendment and Article II, Section 17, may be some evidence that the drafters of the New Mexico Constitution intended a somewhat different scope of protection, our supreme court has recognized that Article II, Section 17, "reads substantially the same" as the First Amendment.

City of Farmington v. Fawcett, 843 P.2d 839, 846 (N.M.App. 1992) (*quoting* Nall v. Baca, 626 P.2d 1280, 1284 (N.M. 1980)). As previously discussed, it is "well established that the Constitution protects the right to receive information and ideas." Stanley, 394 U.S. at 564. Given that the First Amendment and Article II, § 17 "read[] substantially the same[,]" Fawcett, 843 P.2d at 846, the Court concludes that the allegations set forth in Count V of John Doe's complaint are sufficient to withstand the City's motion to dismiss. For the same reason that the allegations set forth in Count I are deemed to be facially plausible, so too are the identical allegations set forth in Count V.  See Iqbal, 129 S.Ct. at 1949.

### 6. Count VI: Violations of Rights Secured by Article II, Section Eighteen of the New Mexico Constitution- Substantive Due Process (New Mexico Declaratory Judgment Act

Article II, § 18 of the New Mexico Constitution provides, in pertinent part, that "[n]o person shall be deprived of life, liberty or property without due process of law. . . ." N.M. CONST. art. II, § 18.  Article II, § 18 is substantially identical to the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which provides, in pertinent part, that "'[N]or shall any State deprive any person of life, liberty, or property, without due process of law." State v. Druktenis, 86 P.3d 1050, 1066 (N.M.App. 2004) (*quoting* U.S. CONST. art. XIV, § 1.  For substantially the reasons set forth above in Section II.B.2, the Court concludes that  the allegations set forth in Count VI of John Doe's complaint are sufficient to withstand the City's motion to dismiss.  Moreover, for the same reason that the allegations set forth in Count II are deemed to be facially plausible, so too are the identical allegations set forth in Count VI.  See Iqbal, 129 S.Ct. at 1949.

### 7. Count VII: Violations of Rights Secured by Article II, Section Eighteen of the New Mexico Constitution- Procedural Due Process (New Mexico Declaratory Judgment Act)

Because the parties stipulated to the dismissal of Count VII, the Court does not address it here for purposes of the City's motion to dismiss. [See Doc. 36].

### 8. Count VIII: Violations of Rights Secured by Article II, Section Eighteen of the New Mexico Constitution-Equal Protection (New Mexico Declaratory Judgment Act)

Article II, § 18 of the New Mexico Constitution provides, in pertinent part, that "[n]o person shall be . . . denied equal protection of the laws." N.M. CONST. art. II, § 18. As with its Due Process Clause, the Equal Protection Clause of Article II, § 18 is substantially identical to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, which forbids any provides, in pertinent part, that "nor shall any person be denied equal protection of State deprive any person of life, liberty, or property, without due process of law." State v. Druktenis, 86 P.3d 1050, 1066 (N.M.App. 2004) (*quoting* U.S. CONST. art. XIV, § 1. For substantially the reasons set forth above in Section II.B.4, the Court concludes that the allegations set forth in Count VIII of John Doe's complaint are sufficient to withstand the City's motion to dismiss. Moreover, for the same reason that the allegations set forth in Count IV are deemed to be facially plausible, so too are the identical allegations set forth in Count VIII. See Iqbal, 129 S.Ct. at 1949.

### 9. Count IX: Violations of Rights Secured by Article II, Section Four of the New Mexico Constitution-Inherent Rights (New Mexico Declaratory Judgment Act)

Article II, § 4 of the New Mexico Constitution provides that "[a]ll persons are born equally free, and have certain natural, inherent and inalienable rights, among which are the rights of enjoying and defending life and liberty, of acquiring, possessing and protecting property, and of seeking and obtaining safety and happiness." Lucero v. Salazar, 877 P.2d 1106, 1107 (N.M.App.,1994) (*quoting* N.M. CONST. art. II, § 4). Section 4 "contains very

general language protecting a variety of rights." State v. Sutton, 816 P.2d 518, 524 (N.M.App. 1991). By contrast, the United States Constitution contains no correlative provision. Indeed, in comparing Article II, § 4 and the Fourteenth Amendment to the United States Constitution, the New Mexico Supreme Court noted § 4's "guarantee of certain minimal levels of safety and security[,]" and also remarked that "[i]n interpreting the more expansive language of Article II, Section 4, [the court was] mindful of the more intimate relationship existing between a state government and its people, as well as the more expansive role states traditionally have played in keeping and maintaining the peace within their borders." California First Bank v. State, 801 P.2d 646, 658 (N.M. 1990).

In this case, John Doe alleges that "[a]ll of the actions taken" by the City "have deprived and continue to deprive [him] of rights secured by Article II, Section 4 . . . specifically the right to enjoy life and liberty, to acquire, possess and protect property [and] to seek and obtain safety and happiness." [Doc. 1; Exh. A at 8]. According to the complaint, activities that John Doe enjoyed by virtue of his pre-ban access to public libraries include (1) checking out books; (2) checking out CDs; and (3) attending meetings and lectures. John Doe further asserts that "the fundamental rights at stake here are inherent to [his] safety and happiness [as] protected by the New Mexico Constitution." [Doc. 9 at 13]. These allegations are sufficient to withstand the City's motion to dismiss Count IX. They have "facial plausibility [inasmuch as the underlying] factual content . . . allows the [C]ourt to draw the reasonable inference that [the City] is liable for the misconduct alleged[,]" Iqbal, 129 S.Ct. at 1949, *i.e.* the deprivation of his inherent rights to (1) enjoy life and liberty; (2) acquire,

17

possess, and protect property; and (3) seek and obtain safety and happiness. [Doc. 1; Exh. A at 8].

### III. CONCLUSION

For the reasons set forth more fully herein, the Court concludes that John Doe has, though his *Complaint for Injunctive and Declaratory Relief*, pled sufficient facts to withstand the City's motion to dismiss. The claims as set forth in the complaint are facially plausible inasmuch as John Doe has pled sufficient factual content to allow the Court to draw the reasonable inference that the City would be liable for the misconduct alleged. See Iqbal, 129 S.Ct. at 1949. Consequently, the City's motion will be denied.

**IT IS, THEREFORE, ORDERED** that *Defendant City of Albuquerque's Motion and Consolidated Memorandum to Dismiss* [Doc. 3] is **DENIED**.

**SO ORDERED** this 30th day of September, 2009, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge